**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 1, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2026AP956**

Cir. Ct. No. 2023TP10

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.R.L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

R.R.L.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Racine County: KRISTIN M. CAFFERTY, Judge. *Affirmed.*

¶1    GUNDRUM, J.[1] R.R.L., referred to herein by the pseudonym Roger, appeals from an order of the circuit court terminating his parental rights to his son, Marcus.[2]  He contends the court erroneously exercised its discretion because, in determining that termination was in Marcus's best interests, the court "failed to consider relevant facts regarding [Marcus]'s relationships with 'other family members' even though such relationships may not have been 'substantial.'" For the following reasons, we conclude the court did not err.

¶2    In deciding whether to terminate a parent's parental rights to a child, the prevailing factor in the circuit court's decision must be "[t]he best interests of the child." WIS. STAT. § 48.426(2).

> In considering the best interests of the child … the court shall consider *but not be limited to* the following:
>
> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) *Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.*
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  Also a pseudonym.

result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3) (emphases added). The decision on whether to terminate a parent's parental rights to a child is left to the circuit court's discretion, and we will only reverse that decision if the court erroneously exercised its discretion. *State v. B.W.*, 2024 WI 28, ¶70, 412 Wis. 2d 364, 8 N.W.3d 22.

¶3 Roger concedes the circuit court considered the specifically enumerated factors of WIS. STAT. § 48.426(3) but asserts the court erroneously exercised its discretion because it "failed to consider relevant facts regarding [Marcus]'s relationships with 'other family members' even though such relationships may not have been 'substantial.'" Roger points out that while § 48.426(3) states that the court "shall consider" the specifically enumerated factors of that statute, the statute also provides that the court is "*not … limited to*" considering only those factors. He asserts that the court "failed to consider" the evidence presented at the termination of parental rights hearing regarding Marcus's relationships with extended family members, insisting that this evidence was also "probative of what disposition" was in Marcus's best interests.

¶4 We affirm because review of the record shows that the circuit court *did* consider the presented evidence related to Marcus's relationships with extended family members—in short, that Marcus had *no relationships* with extended family members.

¶5 When asked to characterize the nature of the relationships between Marcus and "any other family members," a Racine County Human Services Department case manager, who had been Marcus's case manager for essentially

"[h]is entire … life," testified at the termination of parental rights disposition hearing that Marcus "does not have any other relationships with family members." She added that at the time of that hearing, which occurred in April 2025, Marcus had had some contact with Roger's mother—Marcus's grandmother—but this was only two visits in 2022, so three years earlier, when Marcus was an infant. During her own testimony, Marcus's grandmother confirmed that these two visits were the only contact she had ever had with Marcus.

¶6    In deciding to terminate Roger's parental rights to Marcus, the circuit court in part explained:

> any time I sever a relationship between a child and a parent, or a child and a grandparent, or a child and a cousin, or a child and an auntie or uncle, it harms that child, even if there is not a substantial relationship between the child and that family member. I believe it harms them to sever those relationships. What I have to do is balance that harm.
>
> I have to balance that harm with whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination. I have to consider and take into account the conditions of the child's current placement, the likelihood of any future placement and the results of prior placements. When I look at that factor, I do believe it's a balancing test of what is more stable and permanent. That is where I have to choose, which one is more stable, which one is more permanent.
>
> What I hear today from the testimony is that the [adoptive] family is currently stable and permanent and has been for the last—short of three years. What I hear from [Marcus's biological] family is that they are hopeful for a permanent relationship. They have plans for a permanent relationship. They have goals for a permanent relationship. They want a permanent relationship, but it's all based on wishes and plans in the future. When I think about what is in my mind more stable, it's the one that has been existing and is likely to continue to exist, rather than the one I would have to take your word for and I would have to kind of pray that it happens the way you want it to happen. When I balance that, I have to balance it in terms of what I

know versus what I wish or what I pray or what I hope would happen.

¶7     The circuit court recognized that there was potential for relationships to develop with extended family members in the future, but concluded that it could not base its decision on such potential because, ultimately, it was speculative as to whether such relationships would meaningfully develop. Recognizing other testimony that had been presented by Roger and his mother, the court noted that "yes, there are all of these cousins and other relatives out there that could potentially, maybe in the future be really great sources of love and support for [Marcus.]" But the court concluded that in considering Marcus's best interests, it needed to focus on "right now, today."

¶8     Again, review of the record shows that the circuit court *did* consider the impact of potential relationships between Marcus and extended family members but just concluded that the current state of those relationships was not sufficient to sway the decision against terminating Roger's parental rights to Marcus.

¶9     We conclude the circuit court did not erroneously exercise its discretion in terminating Roger's parental rights to Marcus, as it gave appropriate consideration to the only matter Roger complains of on appeal.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.